[No. C048797. Third Dist. Nov. 18, 2005.]

RICHARD W. CASTEEL, Plaintiff and Appellant, v.
COUNTY OF SAN JOAQUIN et al., Defendants and Appellants.

## COUNSEL

Francois X. Sorba for Plaintiff and Appellant.

Robert B. Fien for California Apartment Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Daniel C. Cederborg, Deputy County Counsel, for Defendants and Appellants.

John J. Sansone for California State Association of Counties as Amicus Curiae on behalf of Defendants and Appellants.

## OPINION

**HULL, J.**—Plaintiff, Richard W. Casteel, a nonresident of San Joaquin County (County), initiated this mandamus action to compel the County to refund fees paid by him for solid waste disposal services provided at several of his rental properties located in the unincorporated areas of the County. The superior court granted the petition, concluding the County has no legal authority to collect such fees. Both parties appeal. We reverse.

### FACTS AND PROCEDURAL HISTORY

The facts of this matter are straightforward and undisputed. Plaintiff resides outside the County. However, he owns three residential properties (the properties) in the unincorporated portion of San Joaquin County that he rents to third parties. By local ordinance, the County established mandatory residential solid waste collection for the unincorporated areas of the County, including the properties. Plaintiff did not contract with the County or any other entity for collection of solid waste at the properties. On or prior to May 16, 2003, the County imposed on plaintiff fees totaling $319.20 for solid waste collection at the properties.

Plaintiff paid the fees under protest and filed a claim for reimbursement. The County's Department of Public Works (DPW) conducted a hearing on plaintiff's claim. DPW denied relief but recommended that the County Board of Supervisors (Board) hear plaintiff's appeal. The Board ultimately denied the appeal.

On November 17, 2003, plaintiff filed a petition for writ of mandate with the superior court, naming as respondents the County, the Board, and DPW (collectively defendants). Plaintiff sought an order declaring the solid waste collection fees invalid and directing that they be refunded. On November 24, 2004, the superior court entered an order granting plaintiff's petition. However, the court stayed issuance of the writ pending appeal to this court.

DISCUSSION

## I

### *Solid Waste Disposal Legislation*

Government Code section 25827, subdivision (a) authorizes counties to collect solid waste and to impose reasonable fees on the properties benefited thereby. It reads: "The board of supervisors of each county may collect or contract for the collection, or both, of garbage, waste, refuse, rubbish, offal, trimmings, or other refuse matter under such terms and conditions as may be prescribed by the board of supervisors by resolution or ordinance. For such purposes the board of supervisors may either levy a yearly tax on property within the unincorporated area of the county or impose a reasonable charge against the real property benefited for the services provided. The tax or charge shall not be applicable to property within existing garbage disposal districts."

Government Code section 25828 establishes procedures for collecting unpaid charges authorized by the foregoing section. It reads in relevant part: "If services are provided by a county pursuant to Section 25827, and if the service is compulsory or provided at the request of the property owner, the cost of service which remains unpaid for a period of 60 or more days after the close of the period for which they were billed may be collected by the county as provided herein.

"(a) Once a year the board of supervisors shall cause to be prepared a report of delinquent charges. Upon receipt of the report the board shall fix a time, date, and place for hearing the report and any protests or objections thereto. [¶] . . . [¶]

"(c) At the hearing the board shall hear any objections or protests of property owners liable to be assessed for delinquent charges. The board may make revisions or corrections to the report as it deems just, after which, by resolution, the report shall be confirmed.

"(d) The delinquent charges set forth in the report as confirmed shall constitute special assessments against the respective parcels of land and are a

lien on the property for the amount of the delinquent charges. . . . The assessment may be collected at the same time and in the same manner as ordinary county ad valorem taxes are collected and shall be subject to the same penalties and the same procedure and sale in case of delinquency as provided for those taxes. . . ."

Pursuant to the foregoing authority, the County adopted division 2 of the San Joaquin County Ordinance Code, entitled "Solid Waste Collection and Disposal" (hereafter Division 2). (Further undesignated section references are to the San Joaquin County Ordinance Code.) Division 2 includes sections 5-2100 through 5-3308.

Section 5-2201, subdivision (a) reads: "The Board shall establish residential refuse service areas within the unincorporated area of the County for which exclusive contracts shall be awarded for the collection of residential solid waste. . . ." Section 5-2404 authorizes the Board to establish mandatory residential solid waste collection areas in which parcels containing one to nine habitat units are required to pay for collection services. Section 5-2404, subdivision (c) reads: "Residents within mandatory residential solid waste collection areas shall pay the rates established by the Board for services to be provided in such areas. When charges for such services become delinquent and unpaid for a period of sixty (60) days or more, the County shall notify property owners of such delinquency. Annually, charges which remain delinquent and unpaid for a period of sixty (60) days or more, shall be levied on the respective parcels in accordance with Sections 5-3300 through 5-3306 of the San Joaquin County Ordinance Code."

Section 5-3300, subdivision I.A., authorizes the Board to "fix and collect charges for services rendered by county service areas to pay, in whole or in part, for the cost of said services . . . ." Those charges "may be collected on the tax roll in the same manner and at the same time as general ad valorem property taxes are collected." (§ 5-3301.) Sections 5-3302 through 5-3306 outline the procedures for collecting unpaid fees.

## II

### The County's Appeal

a. *The Trial Court's Ruling*

The trial court concluded the County is not authorized to impose solid waste collection fees on nonresident property owners who have not contracted for such services. In reaching this decision, the court relied on a recent opinion of this court, *California Apartment Assn. v. City of Stockton*

(2000) 80 Cal.App.4th 699 [95 Cal.Rptr.2d 605] (*CAA*). Plaintiff argues this result is also mandated by *Isaac v. City of Los Angeles* (1998) 66 Cal.App.4th 586 [77 Cal.Rptr.2d 752] (*Isaac*).

In *CAA*, property and apartment owners associations sought a writ of mandate to compel the City of Stockton and others to comply with Public Utilities Code section 10009.6, which prohibits municipal corporations that own or operate public utilities from recovering from property owners or subsequent tenants the overdue utility assessments for which a prior tenant had contracted. The trial court denied relief, concluding Public Utilities Code section 10009.6 does not apply to charter cities such as Stockton and, in any event, the subject matter of the law is a municipal affair for which state law is not controlling. (*CAA, supra,* 80 Cal.App.4th at p. 703.)

This court reversed. First, we concluded a charter city is a municipal corporation within the meaning of Public Utilities Code section 10009.6. (*CAA, supra,* 80 Cal.App.4th at pp. 704–705.) Next, we concluded the state's powers over the regulation of utilities is not limited by the city's power over municipal affairs. Tracing the legislative history of the various constitutional provisions relating to public utilities, we concluded that, while the city has authority to bill and collect for utility services, this authority "does not extend to the imposition of an obligation on persons to whom those services were not provided." (*Id.* at p. 712.) We explained: "The authority to bill and collect fees is dependant upon and presupposes the existing law of contractual obligations, i.e., to bill and collect from those who are obligated to pay because they have contracted for the utility service. The power to create a civil obligation, by enacting a law imposing an obligation independent of contract [citation], is of a different order of authority." (*Ibid.*)

In *Isaac*, owners and lenders of residential rental properties brought an action seeking a refund of special assessments levied against the properties for delinquent water and electric power bills. The trial court concluded, among other things, the ordinance authorizing the assessments was unlawful, because it created super-priority liens not authorized by statute. (*Isaac, supra,* 66 Cal.App.4th at pp. 593–594.)

The Court of Appeal affirmed. The Court of Appeal concluded the utility lien created by the local ordinance did not create a special tax or special assessment and, therefore, could be enforced only if authorized by contract or by operation of law. (*Isaac, supra,* 66 Cal.App.4th at pp. 597–598.) According to the court, a lien authorized by operation of law arises only "where there is a statute providing for the creation of a lien in a certain situation, as for example tax liens." (*Id.* at p. 598.) There was no such statute here. As for contractual liens, the court explained: "As there is no evidence in the record

the parties agreed to the imposition of the utility lien in the event of unpaid utility charges, the City can only obtain a lien after it has obtained a judgment on an action to collect the unpaid utility charges." (*Ibid.*, citing Code Civ. Proc., § 697.310 et seq.) However, the local ordinance purported to create a lien for unpaid utility charges without the necessity of obtaining such a judgment. (*Isaac, supra,* at pp. 598–599; see *id.*, appen., at pp. 609–610.) The court also found the ordinance invalid because, as the trial court concluded, it attempted to create a super-priority lien. (*Id.* at p. 599.)

Defendants contend reliance on *Isaac* and *CAA* is misplaced because those cases dealt with utility services, not the collection of solid waste, and neither case involved a state statute expressly authorizing the collection procedures at issue. We agree with the latter point. In *Isaac*, the question was whether the county could enforce a local ordinance authorizing the creation of a super-priority lien. One reason the Court of Appeal concluded it could not was the absence of a state statute authorizing such a lien. Absent an authorizing statute, the local ordinance conflicted with other state laws regulating the creation of contractual liens. In *CAA*, the local ordinance authorizing collection from noncontracting parties not only lacked statutory authority but conflicted with a state statute.

■ In the present matter, Government Code sections 25827 and 25828 expressly authorize the collection of unpaid solid waste disposal fees by imposition of a lien on the property benefited by the service. Imposition of the lien does not depend on the existence of a contract between the local governmental entity and the property owner and, therefore, laws relating to the creation of contractual liens do not apply. *Isaac* expressly recognized a lien created by operation of law arises "where there is a statute providing for the creation of a lien." (*Isaac, supra,* 66 Cal.App.4th at p. 598.) Unlike the situation presented in *CAA*, where a state statute *prohibited* municipal corporations from recovering overdue utility assessments from property owners or subsequent tenants, Government Code sections 25827 and 25828 expressly authorize collection from property owners, whether or not they contracted for the services.

b. *Contentions of Amicus Curiae California Apartment Association*

Amicus curiae California Apartment Association (Association), one of the plaintiffs in *CAA*, argues this matter is controlled by *CAA* because the legislative scheme established in Division 2 is different from that authorized by Government Code sections 25827 and 25828. The Association argues Government Code section 25827 authorizes a county to levy a yearly tax or impose reasonable charges on the real property benefited by solid waste collection services and, therefore, authorizes collection only from property

owners, whereas Division 2 establishes a mechanism for collection from tenants. Consequently, the Association argues, Division 2 has no legislative authority.

The Association relies primarily on section 5-2404, subdivision (c), which reads: "*Residents* within mandatory residential solid waste collection areas shall pay the rates established by the Board for services to be provided in such areas. . . ." (Italics added.) The Association argues "residents" refers to those living in the County whose solid wastes are collected, not absentee landlords.

We are not persuaded. First, Government Code section 25827 does not require that charges for solid waste disposal services be imposed on property owners rather than resident tenants. It states the Board "may either levy a yearly tax on property within the unincorporated area of the county or impose a reasonable charge against the real property benefited for the services provided." (Gov. Code, § 25827, subd. (a).) There is no requirement that the reasonable charge against the real property benefited by the service be a charge upon the property owner. Both the property owner and the tenant have a legally recognized interest in a parcel of real property. A charge against the real property may as readily be imposed in the first instance on the tenant, the holder of a leasehold interest, as on the property owner.

Furthermore, the statutory scheme created by Division 2 does create an obligation imposed upon residential property within the affected areas. The remainder of section 5-2404, subdivision (c) reads: "When charges for such services become delinquent and unpaid for a period of sixty (60) days or more, the County shall notify property owners of such delinquency. Annually, charges which remain delinquent and unpaid for a period of sixty (60) days or more, shall be levied on the respective parcels in accordance with Sections 5-3300 through 5-3306 of the San Joaquin County Ordinance Code." In addition, the obligation to pay for solid waste collection services does not depend on the existence of a contract for such services. Nor does it depend, to the extent a contract does exist, on the identity of the contracting party. Section 5-2404, subdivision (b) reads: "Residential solid waste collection and related services will be provided by the franchise collectors, as required by the residential refuse collection contracts, to residents within mandatory residential solid waste collection areas, whether or not those services were requested by the property owner or tenant. . . ." In other words, the service is provided to the tenant, regardless of who pays the fee, but, ultimately, any unpaid fee will become a lien against the property. Section 5-2404, subdivision (c) merely recognizes that the County may look for payment in the first instance from the tenant.

c. *Division 2 Appeal Procedures*

Plaintiff contends the procedures outlined in Division 2 for contesting a fee assessment do not comply with Government Code sections 25827 and 25828. In particular, plaintiff argues the statutes require that protests be considered by the Board, whereas section 5-3303 provides for consideration of protests by DPW, with only a right of appeal to the Board. We disagree.

As previously noted, Government Code section 25828 provides in part: "(a) Once a year the board of supervisors shall cause to be prepared a report of delinquent charges. Upon receipt of the report the board shall fix a time, date, and place for hearing the report and any protests or objections thereto. [¶] . . . [¶] (c) At the hearing the board shall hear any objections or protests of property owners liable to be assessed for delinquent charges. The board may make revisions or corrections to the report as it deems just, after which, by resolution, the report shall be confirmed."

Section 5-3302 requires that a report be prepared "for each service area or special district for which charges for special assessments will be imposed and collected on the tax roll." Upon filing of this report, "the Clerk shall fix a time, date and place for the hearing thereon and for filing objections or protests thereto. . . . With respect to delinquent mandatory residential solid waste collection charges, [DPW], prior to finalizing and submitting a report of delinquent mandatory solid waste collection charges to the [Board] for assessment on respective parcels, pursuant to Section 5-3300, shall conduct a public hearing concerning the report of delinquent mandatory solid waste collection charges and mail notices of the hearing to the effected property owners not less than ten (10) days prior to the date of the hearing. Affected property owners may appeal a [DPW] decision to place their property on the report of delinquent mandatory solid waste collection charges directly to the [Board]." (§ 5-3303.) At the designated time and place, the Board "shall hear and consider all objections or protests, if any, to the report and may continue the hearing from time to time. Upon conclusion of the hearing, the [Board] may adopt, revise, change, reduce or modify any charge or assessment and shall make its determination upon each charge or assessment as described in the report and shall by ordinance confirm the report." (§ 5-3304.)

Plaintiff argues the procedure outlined in section 5-3303 does not contemplate the hearing of *objections* by the Board, only the hearing of *appeals*. According to plaintiff, by allowing DPW to hear objections, the Board "does not necessarily get to hear all objections or protests of property owners." Plaintiff argues it is unfair to have DPW consider the protest inasmuch as it is DPW that imposes the fee in the first place and, therefore, the decision on the protest is made by a "potentially biased person." Plaintiff further argues that,

after a decision is made by DPW, the Board will "rubber stamp[]" DPW's decision, because DPW has superior knowledge of the issues.

 Plaintiff's arguments presuppose an appeal to the Board under section 5-3303 is governed by a deferential standard of review whereby a decision by DPW will be overturned only if not supported by substantial evidence or an abuse of discretion. However, there is nothing in Division 2 that suggests Board review is other than de novo. On the contrary, as described *ante*, section 5-3304 requires the Board to "hear and consider *all objections or protests*, if any, to the report." (Italics added.) It further provides: "Upon conclusion of the hearing, the [Board] may adopt, revise, change, reduce or modify any charge or assessment and shall make its determination upon each charge or assessment as described in the report and shall by ordinance confirm the report." Plaintiff cites nothing to suggest the Board's consideration of "all objections or protests" begins with a presumption that DPW has correctly ruled on the matter. The scheme established by Division 2 gives DPW an opportunity to grant relief without the necessity of Board review. In effect, a protesting property owner has two chances to win.

## III

### *Plaintiff's Cross-appeal*

Plaintiff has filed a cross-appeal. However, he does not seek any affirmative relief or allege any error by the trial court. Instead, plaintiff asserts there are other grounds for affirming the trial court's grant of writ relief that were not ruled upon by the trial court. In particular, plaintiff contends the distinction created by section 5-2404 between properties with one to nine habitat units and those with more than nine habitat units violates equal protection. Plaintiff argues there is no rational basis for this distinction. Plaintiff further argues the fees imposed for solid waste collection violate article XIII D of the California Constitution, which prohibits local governments from imposing fees or charges for property-related services unless they meet certain requirements. (See Cal. Const., art. XIII D, § 6, subd. (b).)

These issues were raised by plaintiff below, but, because the superior court concluded the fees could not be imposed on nonresident landlords for other reasons, were not resolved by that court. Although plaintiff requests that we decide the issues here, it is more appropriate for the superior court to address the issues in the first instance on remand.

## Disposition

The judgment is reversed and the matter remanded to the superior court with directions to vacate the stay order and the writ of mandate and to conduct further proceedings consistent with this opinion. Defendants shall receive their costs on appeal.

Scotland, P. J., and Blease, J., concurred.