Filed 5/23/19

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

TOBIAS KAHAN,

      Plaintiff and Appellant,

v.

CITY OF RICHMOND,

      Defendant and Respondent.

A150866

(Contra Costa County
Super. Ct. No. MSC16-01298)

      Tobias Kahan purchased property in Richmond, California at a foreclosure sale. Shortly before the sale, the City of Richmond (City) had recorded a "special assessment" lien against the property for unpaid garbage collection fees, pursuant to a municipal ordinance. When Kahan later sold the property, he had to pay the delinquent garbage fees as well as administrative charges and escrow fees to obtain a release of the City's lien.

      Kahan filed a class action lawsuit alleging the City's practice of recording liens for unpaid garbage collection fees violates and is preempted by state law. Kahan contends the City has no authority to levy "special assessments" for garbage collection charges that are "user fees" under state law, and argues the ordinance purporting to authorize such assessments violates state laws on lien priority. He further contends that even if the practice is allowed, the City's action violated its own ordinance because a garbage lien may not attach where a "bona fide encumbrancer for value" has placed a lien on the property at any time before the garbage lien is recorded.

_____

     [*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.E. and F.

The trial court sustained general and special demurrers to each of the causes of action in Kahan's complaint, granting leave to amend. Kahan chose not to amend his complaint and the trial court granted the City's motion to dismiss with prejudice. This appeal followed. We affirm.

## I. BACKGROUND

Richmond Municipal Code section 9.20.110 provides that if a property owner fails to pay delinquent solid waste collection charges, the City may, after notice and hearing procedures, record a "special assessment against the property to which the service was rendered" to be included in the next property tax assessment. (Richmond Mun. Code, § 9.20.110, subd. (b)–(h).) "The assessment shall be collected at the same time and in the same manner as ordinary municipal taxes are collected. The assessment shall be subordinate to all existing special assessment liens previously imposed on the property. It shall have priority over all other liens except for those State, County and municipal taxes with which it shall have parity. . . . All laws applicable to the levy, collection and enforcement of municipal taxes shall be applicable to the special assessment." (*Id.*, subd. (i).)

Pursuant to this ordinance, on January 8, 2014, the City recorded an assessment lien for unpaid solid waste collection service charges (garbage lien) against a residential property. Kahan alleges the City's garbage lien was recorded "after the recordation of one or more bona fide mortgage encumbrances on the Subject Property." On January 16, 2014, Kahan purchased the property at a foreclosure sale. When he later sold the property on August 21, 2014, he was required to pay amounts demanded by the City, along with administrative charges and escrow fees, in order to obtain a release of the garbage lien.

In August 2015, Kahan filed a notice of claim with the City on his own behalf and on behalf of an alleged class of similarly situated individuals and entities. The City sent Kahan a notice of claim deemed rejected, after which he filed this class action lawsuit. Kahan alleged causes of action for declaratory relief, injunctive relief, inverse condemnation, and negligence, seeking an injunction to stop the City from recording

2

garbage liens on "encumbered property," removal of existing garbage liens from "previously encumbered" properties, and a refund of all garbage collection charges, administrative fees, and escrow fees. Kahan's negligence and inverse condemnation claims also sought damages arising from the City's conduct.

The City demurred to each cause of action in Kahan's complaint on the grounds he failed to state a cause of action and the County of Contra Costa (County) was a necessary party to the lawsuit. (Code Civ. Proc., §§ 430.10, subds. (d) & (e).) First, the City argued it could impose the garbage lien under Government Code sections 25831 and 38790.1, which authorize the City to convert unpaid, delinquent garbage fees to a "special assessment" and record a lien against the subject property to be placed on the secured property tax roll. The City contended that because the special assessments are collected in the same manner as ordinary county ad valorem property taxes, Kahan's refund claim was subject to the procedures of the Revenue and Taxation Code section 5096 et seq. Since Kahan failed to follow the required procedures and exhaust his administrative remedies, his refund claim must fail. Further, the City asserted Kahan was required to name the County as a necessary and indispensable party to the lawsuit, both because the party who collects the special assessment on the City's behalf must be named under Revenue and Taxation Code section 5146 and because the County was the only party that could provide Kahan the relief he sought. Among other things, the City also argued it was statutorily immune from Kahan's causes of action for inverse condemnation and negligence.

Kahan opposed the demurrer, arguing it must be overruled because the City's arguments were all predicated on the legally incorrect premise that charges for garbage collection fees could be converted to "special assessments." Because such charges are " 'user fees' " as defined under the California Constitution, Kahan argued, they could not be treated as special assessments or tax levies. Kahan further asserted Government Code section 25831 does not authorize the City to convert municipal garbage fees to special assessments and contended the City's treatment of garbage fees as special assessments conflicts with the statewide lien priority statutes. Kahan also argued the governmental

3

tort immunity statutes on which the City relied did not apply to Kahan's negligence and inverse condemnation causes of action.

The trial court issued a tentative ruling, which was contested. After hearing oral argument, the trial court ordered, in relevant part, as follows:

"1. For the reasons set forth in the Court's tentative ruling on pages 6–9, the demurrers to the Complaint are sustained with leave to amend on the grounds that: 1) the County of Contra Costa is a necessary party for the requested relief (Part II.A); and 2) the complaint fails to state a cause of action for a refund of an assessment under Revenue & Taxation Code section 5096 *et seq.* (Part II.B).

"2. The demurrer on the basis of immunity to the Third Cause of Action for Inverse Condemnation and Violation of Due Process and the Fourth Cause of Action for Negligence is sustained, with leave to amend, to the extent the complaint goes beyond seeking a refund.

"[¶] . . . [¶]

"5. Plaintiff has until January 17, 2017 to file his amended complaint."

The trial court explained the demurrer was sustained with leave to amend for Kahan to add the County as a defendant because the injunctive relief sought required action by the County. As to compliance with the procedural requirements of the Revenue and Taxation Code, the trial court agreed with the City that Government Code section 25831 authorizes counties to collect delinquent fees for garbage collection services as special assessments and Government Code section 38790.1 allows cities to collect such fees in the same manner as counties. The court rejected Kahan's argument that the constitutional definition of "special assessment" conflicts with the statutory procedure for collection of garbage fees under Government Code section 25831.

Though the trial court sustained the demurrers with leave to amend, Kahan did not amend within the time provided. The City moved to dismiss with prejudice, and the trial court entered a judgment of dismissal. Kahan appealed.

4

## II. DISCUSSION

### A. *Standard of Review*

"We review the ruling sustaining the demurrer de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law." (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 740 (*Kan*).) " '[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*Moran v. Prime Healthcare Management, Inc.* (2016) 3 Cal.App.5th 1131, 1139.) "When conducting this independent review, appellate courts 'treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.' " (*Esparza v. Kaweah Delta Dist. Hospital* (2016) 3 Cal.App.5th 547, 552.)

Although we review the complaint de novo, " '[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action. [Citation.] We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings.' " (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490–1491.) It is the trial court's ruling we review, not its reasoning or rationale. (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 994; *Kan, supra,* 230 Cal.App.4th at p. 740.)

We also review questions of statutory interpretation de novo. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082 (*MacIsaac*).) "We begin with the fundamental rule that our primary task is to determine the lawmakers' intent." (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.) In determining that intent, " 'we first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction.' " (*MacIsaac*, at p. 1082.)

**B.** *The City Was Authorized to Record the Garbage Lien as a Special Assessment*

Kahan contends the trial court erred in sustaining demurrers to each cause of action in the complaint because charges for garbage collection services are "user fees," which the City cannot "unilaterally" convert into "assessments." Kahan also argues state law does not authorize the City to designate garbage fees as "special assessments," as provided in its ordinance. Thus, Kahan asserts, the procedural requirements in the Revenue and Taxation Code, which apply only to refunds of taxes and assessments, do not apply to his claims. As we will explain, we reject these arguments because the City's treatment of delinquent garbage fees as a special assessment was expressly authorized by statute.

Government Code section 25831 provides, in relevant part, that "[a]ny fees authorized pursuant to Section 25830, or pursuant to Section 40059 of the Public Resources Code, that remain unpaid for a period of 60 or more days after the date upon which they were billed may be collected thereafter by the county as provided in this section." Once statutory notice and hearing requirements have been met, Government Code section 25831, subdivision (d) provides the delinquent fees "shall constitute special assessments against the respective parcels of land and are a lien on the property for the amount of the delinquent fees." The lien attaches when it is recorded, and the "assessment may be collected at the same time and in the same manner as ordinary county ad valorem property taxes are collected . . . ." (*Ibid.*)

The fees that may be collected as special assessments include charges for garbage collection services. Government Code section 25830, subdivision (a) authorizes the county board of supervisors to "establish a schedule of fees to be imposed on land within the unincorporated area of the county and incorporated areas of the county where cities do not provide their own waste disposal sites, revenue from the fees to be used for the acquisition, operation, and maintenance of county waste disposal sites and *for financing waste collection*, processing, reclamation, *and disposal services,* where those services are provided." (Italics added.) Authority for the City's collection of such fees is provided in Government Code section 38790.1, which provides, "Any city collecting garbage fees or

6

charges may collect delinquent fees or charges in the manner provided in Section 25831 for counties." Further, Public Resources Code section 40059 provides authority for cities and counties, among others, to "determine . . . [¶] . . . Aspects of solid waste handling which are of local concern, including, but not limited to, . . . charges and fees . . . ." (*Id.*, subd. (a)(1).) Read together, these statutes expressly authorize the City to charge delinquent garbage fees as a "special assessment" against the parcel and as a lien on the property for the amount of the delinquent fees.

Kahan's argument that the fees authorized by these statutes are only to pay for waste disposal sites is unavailing. As to Government Code section 25830, Kahan contends the fees authorized by that statute are to pay only for the acquisition, operation, and maintenance of county waste disposal sites where such services are provided and cities do not provide their own sites. While that is one of the two enumerated purposes of the fees, he ignores the express language of the statute that the revenue from the fees is also to be used for "financing waste collection, processing, reclamation, and disposal services."[1] (Gov. Code, § 25830, subd. (a).) Where, as here, "the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction." (*MacIsaac, supra,* 134 Cal.App.4th at p. 1083; *Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [courts will not " ' "interpret away clear language in favor of an ambiguity that does not exist" ' "].)

We find similarly unpersuasive Kahan's argument, raised for the first time at oral argument, that Government Code section 25830 allows only fees for acquisition and maintenance of landfills because the statute is located within article 2, entitled "Disposal Facilities." First, we need not consider claims not raised in the parties' briefs. (*Collins v.*

---

[1] Kahan did not address the meaning of this language in his briefs. At oral argument, when questioned three times about its plain meaning, Kahan's counsel eventually offered that cities may help pay for county landfills by charging residents fees for services directed to that landfill. It remains unclear to this court how that argument, unsupported by any evidence of legislative intent, explains away the plain meaning of the words of Government Code section 25830, which state the revenue from fees may be used to finance waste collection services.

7

*Navistar, Inc.* (2013) 214 Cal.App.4th 1486, 1508, fn. 8.) Second, his argument fails on the merits. Though we may consider chapter, article, and section headings in construing statutes, we will not rely on the title of an article where, as here, the unambiguous express language of the statute dictates its meaning and application. (See, e.g., *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 727, disapproved on other grounds in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19; *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 602 ["Title or chapter headings are unofficial and do not alter the explicit scope, meaning, or intent of a statute."].) In any event, Government Code section 25830's section heading, "Fees for waste disposal sites *and services*" (italics added), suggests it authorizes fees for waste disposal services.[2]

But even if Government Code section 25830 did not apply here, Kahan does not directly address the fact that Government Code section 25831 also incorporates fees authorized by Public Resources Code section 40059. Kahan makes a cursory argument in his reply brief that Public Resources Code section 40059 is a part of the California Integrated Waste Management Act of 1989 (Pub. Resources Code, § 40000 et seq.), which "was enacted . . . to address the fact that 'landfills throughout the state were nearly filled, and we were figuratively awash in our own trash.' " (*Industrial Waste & Debris Box Service, Inc. v. Murphy* (2016) 4 Cal.App.5th 1135, 1140.) But he does not discuss the plain meaning of the words in the statute allowing "each . . . city . . . [to] determine . . . [¶] . . . Aspects of solid waste handling which are of local concern, including, but not limited to frequency of collection, means of collection and transportation, level of services, *charges and fees*, and nature, location, and extent of providing solid waste

---

[2] Though we need not consult legislative history when statutory language is unambiguous, here it further supports our reading of the statute. In 1972, the original version of Government Code section 25830 was repealed and replaced by urgency legislation to correct the inadvertent omission from the 1971 statute of a provision allowing the charges to be used for financing waste disposal and collection services. (Stats. 1972, ch. 12, § 7, p. 13; Sen. Com. on Local Government, Staff Analysis of Assem. Bill No. 64 (1971–1972 Reg. Sess.) as amended Jan. 17, 1972.)

handling services." (Pub. Resources Code, § 40059, subd. (a)(1), italics added.) On its face, this statute authorizes cities to establish fees for garbage collection services.

As for Government Code section 38790.1, Kahan contends it, too, was intended to defray the costs of landfills, not to provide for collection of garbage fees. Kahan's claim is premised on his assertion that Government Code section 38790.1 "relates to the immediately preceding provision, Government Code section 38790, which provides in relevant part that 'By gift, purchase, or condemnation any city may acquire land within the county where the city is located for garbage disposal sites and rights of way for roadways to the site.' " Kahan cites no legal authority for this argument, and points to nothing in the language of either statute suggesting these statutes are part of an integrated scheme. To the contrary, they were first adopted 23 years apart and neither section references the other. (Stats. 1949, ch. 79, § 1, p. 188 [adopting Gov. Code, § 38790]; Stats. 1972, ch. 175, § 2.5, p. 395 [adopting Gov. Code, § 38790.1].) Moreover, both provisions are part of article 7, "miscellaneous" statutes relating to city government, which covers a variety of items, including contracts for ambulance service and dog licenses. (Gov. Code, §§ 38790–38794.) Nothing links one of these provisions to the other, other than their placement in the same miscellaneous category.

Kahan nonetheless argues "the plain meaning of [Government Code] Section 38790.1 is not clear and unambiguous," and urges us to look to the legislative history to interpret the statute. But other than the unsupported argument it is related to the preceding section, Kahan has not explained why the language is ambiguous. To the contrary, it appears to us quite clear: "Any city collecting garbage fees or charges may collect delinquent fees or charges in the manner provided in Section 25831 for counties." (Gov. Code, § 38790.1.) Nothing about that language restricts the fees to waste disposal sites, and as we have discussed above, the statutes cited in Government Code section 25831 expressly authorize fees for garbage collection services.

However, even were we to look to the legislative history of Government Code section 38790.1, as Kahan suggests, we must disagree with his premise. The bill adopting Government Code section 38790.1, Assembly Bill No. 2304 (1971–1972 Reg.

9

Sess.), concerned " 'solid waste disposal fees,' " which were defined as fees "used to finance the collection and disposal of solid waste and the acquisition of solid waste disposal sites." (Assem. Com. on Local Government, Analysis of Assem. Bill No. 2304 (1971–1972 Reg. Sess.) Apr. 13, 1972, p. 1.) Assembly Bill No. 2304 was amended after it was introduced to add Government Code section 38790.1, giving cities the same authority to collect solid waste fees via the tax roll as counties under Government Code section 25831. (Assem. Bill No. 2304 (1971–1972 Reg. Sess.) as amended May 30, 1972.) Kahan points to the fact that the amendment adding section 38790.1 was requested by the City of Orland, whose attorney stated it would have the effect of lowering the "cost of administering the [City of Orland's] share of the solid waste disposal project in Glenn County." This comment was made in a letter from the Orland City Attorney to Assemblyman Ray Johnson, *after* passage of the legislation. This single, postenactment comment by an attorney for a city to a legislator is not admissible or persuasive evidence of the Legislature's intent in adopting it. (See, e.g., *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30, 37–39 ["to be cognizable, legislative history must shed light on the collegial view of the Legislature *as a whole*"; postenrollment documents regarding bill and subjective intent reflected by statements of interested parties are not cognizable legislative history]; *California Highway Patrol v. Superior Court* (2006) 135 Cal.App.4th 488, 501 [views of individual legislator or staffer offered in documents created after statute has been enacted not properly considered part of a statute's legislative history].) Further, the legislative digest explains Assembly Bill No. 2304 provides a procedure for cities to levy and collect solid waste disposal fees to finance both the acquisition of landfill sites and the collection and disposal of solid waste.[3] (Legis. Counsel's Dig., Assem. Bill No. 2304 2 Stats. 1972 (1971–1972 Reg. Sess.) Summary Dig., p. 26 [indicating bill "Revises collection

---

[3] The primary concern prompting the urgency legislation was to allow counties to collect fees in a timely manner to avoid the necessity of borrowing funds to finance collection services and disposal sites. (Stats. 1972, ch. 175, § 3, p. 395.)

procedure for certain fees for waste disposal sites and for waste collection, processing, reclamation, and disposal services.  Authorizes cities to collect delinquent fees or charges for garbage in same fashion as counties."].)  Kahan has not provided any cognizable evidence of legislative intent to circumscribe a city's authority to collect fees only to finance landfills.

Despite the clear statutory language authorizing the City to collect delinquent garbage fees as "special assessments," Kahan contends the definitions of "tax," "assessment," and "user fee" under the California Constitution preclude the City from labelling these charges as special assessments.  Under the Constitution, a tax is "any levy, charge, or exaction of any kind imposed by a local government, except, the following: [¶] (1) A charge imposed for a specific benefit conferred or privilege granted directly to the payor . . . . [¶] (2) A charge imposed for a specific government service or product provided directly to the payor . . . . [¶] . . . [¶] (7) Assessments and property-related fees imposed in accordance with the provisions of Article XIII D."  (Cal. Const., art. XIII C, § 1, subd. (e)(1), (2), & (7).)  An " 'Assessment' " is "any levy or charge upon real property by an agency for a special benefit conferred upon the real property."  (Cal. Const., art. XIII D, § 2, subd. (b).)  A " 'Fee' " or " 'charge,' " on the other hand, is a "levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service."  (Cal. Const., art. XIII D, § 2, subd. (e).)  Kahan urges us to apply these definitions to determine the City was prohibited from designating garbage fees as special assessments.

We decline to do so for several reasons.

First, the definitions Kahan relies upon under article XIII D of the California Constitution relate to procedural requirements and restrictions on a local government's authority to impose or increase revenue measures, not methods for collection of delinquent service charges.  (See *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 836–837 [explaining historical background of Prop. 218, which added art. XIII D to the Cal. Const.].)  Kahan's complaint does not

11

allege violation of any of those constitutional provisions. Moreover, the definitions, including those for "assessments" and "fees," are limited to use "in this article." (Cal. Const., art. XIII D, § 2.) Kahan does not cite, and we are unaware of, any authority suggesting the constitutional definitions of those terms were intended to apply to statutes authorizing the collection of delinquent fees like Government Code section 25831. (See *Howard Jarvis Taxpayers Assn. v. City of San Diego* (1999) 72 Cal.App.4th 230, 236 [rejecting argument that definition of "assessment" in Prop. 218 provides a definition for all constitutional and statutory provisions]; *Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 295 [definition of "assessment" in art. XIII D does not establish meaning of that term for purposes of statute governing nuisance abatement].)

Second, Kahan relies heavily on *Isaac v. County of Los Angeles* (1998) 66 Cal.App.4th 586 (*Isaac*) to argue the City could not treat delinquent garbage charges as special assessments, but if anything, that case supports the City's position under the facts here. In *Isaac,* the court considered the validity of an ordinance adopted by the City of Los Angeles providing for the imposition of special assessment liens on apartment buildings for the collection of past due water and electric utility bills. (*Id.* at p. 591.) Like the City's ordinance in this case, the ordinance in *Isaac* allowed the city to record a lien securing the assessment against the subject real property, and provided the lien had priority over other liens and encumbrances against the property. (*Id.* at pp. 591–592.) The court first considered whether the utility lien imposed by the ordinance was a special assessment or a special tax for purposes of article XIII A of the Constitution, concluding it was neither a valid special assessment nor a special tax, but a user fee. (*Isaac*, at p. 598.) Critically, however, the court then observed, "the City [of Los Angeles] cannot impose the utility lien *unless there are other legal grounds supporting its imposition.*" (*Ibid.*, italics added.) It explained: "Under the Civil Code, liens are created in two ways: (1) by operation of law, and (2) by contract. (Civ. Code, § 2881.) Liens arise by operation of law where there is a statute providing for the creation of a lien in a certain situation, as for example tax liens." (*Ibid.*) Because there was no statutory or

12

contractual basis for the utility lien in *Isaac*, the court determined the ordinance was invalid.[4] (*Isaac*, at pp. 598–599.)

The absence of statutory authority for the utility lien in *Isaac* is the dispositive difference between that case and this one. Because Government Code sections 25831 and 38790.1 expressly authorize the City to impose a lien for delinquent garbage fees, the City's ordinance does not violate state law governing the creation of liens as did the municipal ordinance in *Isaac*.

This analysis is further supported by *Casteel v. County of San Joaquin* (2005) 134 Cal.App.4th 918. In *Casteel,* the plaintiff-property owner challenged a county ordinance authorizing collection of solid waste fees from nonresident property owners. The ordinance had been adopted pursuant to Government Code sections 25827 and 25828, which like Government Code sections 25830 and 25831, allow counties to collect fees for solid waste collection and impose a special assessment for delinquent fees as a lien on the subject real property. (*Casteel*, at pp. 921–922.) Relying on *Isaac,* the plaintiff argued the ordinance was invalid because he had not contracted for the services. The court rejected that argument, explaining that "Government Code sections 25827 and 25828 expressly authorize the collection of unpaid solid waste disposal fees by imposition of a lien on the property benefited by the service. . . . *Isaac* expressly recognized a lien created by operation of law arises 'where there is a statute providing for the creation of a lien.' " (*Casteel*, at p. 924.) Similarly, here, Government Code sections 25830, 25831, and Public Resources Code section 40059 authorize cities to collect unpaid garbage fees by means of a superpriority lien.

Third, we reject Kahan's argument because even if the delinquent garbage fees are more appropriately categorized as "user fees" than assessments, Kahan cites no authority that these distinctions apply to the Revenue and Taxation Code provisions which govern

---

[4] As we will discuss further below, the *Isaac* court also held the ordinance invalid because it was preempted by the statutory scheme governing the priority of liens on real property. (*Isaac*, *supra*, 66 Cal.App.4th at p. 594.)

the procedures that must be followed in pursuing a refund of a tax or assessment. (See Rev. & Tax. Code, § 5096 et seq.) That statutory scheme includes its own definition of taxes and assessments. (See *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 423 [" 'If the Legislature has provided an express definition of a term, that definition is ordinarily binding on the courts.' "].) Revenue and Taxation Code section 4801 defines " 'taxes' " to include "assessments collected at the same time and in the same manner as county taxes." Government Code section 25831, subdivision (d), in turn, expressly provides the delinquent garbage fees "may be collected at the same time and in the same manner as ordinary county ad valorem property taxes are collected . . . ." Because the Legislature specifically determined delinquent garbage fees may be recorded as an assessment lien, and that lien may be collected at the same time and in the same manner as county property taxes, the procedures of the Revenue and Taxation Code apply to Kahan's suit seeking a refund of those amounts. (See *Hanjin Internat. Corp. v. Los Angeles County Metropolitan Transportation Authority* (2003) 110 Cal.App.4th 1109, 1112–1113 [definitional distinction between taxes and special assessments overridden by Rev. & Tax. Code, § 4801 and Pub. Util. Code, § 33017 providing for levy and collection of special benefit assessment at same time and in same manner as taxes].) Accordingly, the trial court did not err in sustaining the demurrers on the basis that Kahan failed to state a cause of action because he failed to allege compliance with the procedures of the Revenue and Taxation Code.

Fourth, even if the garbage collection fees are technically user fees, and even if Kahan is correct that the Revenue and Taxation Code procedural requirements do not apply, that does not mean the creation of the lien was *unauthorized*. Each of the causes of action in Kahan's complaint is premised on the contention the City's actions were unlawful and not authorized by Government Code sections 38790.1 and 25831, subdivision (d). Because we conclude the recording of a lien for delinquent garbage fees was expressly authorized by statute regardless of whether those fees are, by their nature, special assessments or user fees, Kahan has failed to state a cause of action on any of the theories he asserts. (*Rossberg v. Bank of America, N.A., supra,* 219 Cal.App.4th at

14

p. 1491 [appellate court will affirm order sustaining demurrer on any ground on which it can properly be sustained, regardless of grounds relied on by trial court].)

## C. *State Lien Priority Preemption*

Kahan also relies on *Isaac*, *supra*, 66 Cal.App.4th 586 to argue the City's characterization of garbage liens conflicts with and is preempted by state lien priority law. In *Isaac*, the City of Los Angeles argued its ordinance was valid because utility service is a municipal affair and it was within the police power of the city to legislate with respect to payment of utility charges. The court rejected that argument, finding "lien priorities on real property a matter of statewide concern because uniformity in lien priority is essential." (*Id.* at p. 600.) It then explained: "Because lien priority is a matter of statewide concern, the City [of Los Angeles] may not enact legislation that conflicts or disables the effectiveness of statutory law. The statutory scheme of lien priority giving priority to certain liens, such as tax liens and purchase money mortgages, reflects a legislative intent to favor certain types of charges against real property. The utility lien at issue disrupts this balance by giving what is essentially a judgment lien priority normally accorded only to tax liens." (*Id.* at p. 601.)

Again, *Isaac* is distinguishable. There*,* the City of Los Angeles was relying on its general police power to grant delinquent utility charges priority over other liens. (*Isaac, supra,* 66 Cal.App.4th at p. 599.) Here, Government Code sections 25831 and 38790.1 expressly authorize the superpriority status accorded the garbage lien in this case, and thus the City's ordinance was entirely consistent with statutory lien priority law.

## D. *Bona Fide Encumbrancer Exception*

Next Kahan argues that even if Government Code sections 25831 and 38790.1 authorize the City to create special assessments for unpaid garbage fees, the City's application of its ordinance in this case was unauthorized because those statutory provisions cannot be used against a property to which a lien of a bona fide encumbrancer has attached.

Government Code section 25831, subdivision (d) provides, in relevant part: "All laws applicable to the levy, collection, and enforcement of county ad valorem property

15

taxes shall be applicable to the assessment, except that if any real property to which the lien would attach has been transferred or conveyed to a bona fide purchaser for value, *or if a lien of a bona fide encumbrancer for value has been created and attaches thereon, prior to the date on which the first installment of the taxes would become delinquent, then the lien that would otherwise be imposed by this section shall not attach to the real property* and the delinquent fees, as confirmed, relating to the property shall be transferred to the unsecured roll for collection." (Italics added.) Kahan's complaint alleges the garbage lien recorded by the City on January 8, 2014 was "recorded after the recordation of one or more bona fide mortgage encumbrances on the Subject Property." Relying on Government Code section 25831, subdivision (d) and this allegation, Kahan contends he is not subject to the lien because a bona fide encumbrancer placed a lien on the property at some point before the City recorded its lien.

Kahan's position reflects a fundamental misunderstanding of the bona fide purchaser/bona fide encumbrancer doctrine. As explained by Miller and Starr in their preeminent California real estate treatise, "A preferential priority is given to a purchaser or encumbrancer who acquires a lien or title interest in good faith and for value without knowledge or notice of a prior interest. Such a party is called a 'bona fide purchaser' or a 'bona fide encumbrancer,' depending on whether the interest is an estate in the property or a lien on the property. . . . A 'bona fide encumbrancer' is an encumbrancer acting in good faith and for value who receives a lien or encumbrance on real property, or perhaps merely the means of obtaining one without knowledge or notice of competing liens on the same property, and who has parted with something of value in consideration for the encumbrance." (4 Miller & Starr, Cal. Real Estate (4th ed.) § 10:50, pp. 10-204–10-205, fns. omitted.) The same treatise also states: "The subsequent interest of a bona fide purchaser or encumbrancer achieves priority over a prior interest where the subsequent party acquires an interest in the property for a valuable consideration, in good faith, *and when he or she first records the instrument creating his or her interest* without knowledge or notice of the prior interest . . . ." (*Id.* at p. 10-206, fns. omitted; see *Caito v. United California Bank* (1978) 20 Cal.3d 694, 702 ["Policy runs against upholding

secret liens and charges to the injury of *subsequent* innocent encumbrancers. [Citations.] . . . [¶] . . . '. . . A purchaser (including an encumbrancer) in good faith for value and without actual or constructive notice is entitled to protection against undisclosed liens and equities *existing* against . . . unrecorded instruments.' " (italics added)]; *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251 [bona fide purchaser for value who acquires interest in real property without notice of another's asserted rights in the property take the property free of such unknown rights; same elements apply to bona fide encumbrancer]; *Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 530 [good faith encumbrancer for value is *subsequent* encumbrancer].)

Kahan apparently concedes *he* is not a bona fide purchaser or encumbrancer. It is undisputed he purchased the subject property at a foreclosure sale with notice of the garbage lien, which was recorded eight days before the sale. (See *Caito v. United California Bank*, *supra*, 20 Cal.3d at p. 702 [recorded instrument provides constructive notice of its contents]; *In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 437 [law presumes a party acquiring property has notice of the contents of a properly recorded document affecting the property].) Kahan nonetheless contends the language of the exception in Government Code section 25831, subdivision (d) must be read to provide the garbage lien cannot "be used against property that is already encumbered." At oral argument, Kahan's counsel argued the exception applies whenever a mortgage has been obtained on the property prior to the garbage lien.

In interpreting the meaning of a statute, we look first to its plain language. (*MacIssac, supra,* 134 Cal.App.4th at p. 1082.) Here, the exception provides "if a lien of a bona fide encumbrancer for value has been created and attaches [to the real property], prior to the date on which the first installment of the taxes would become delinquent, then the lien that would otherwise be imposed by this section shall not attach to the real property . . . ." (Gov. Code, § 25831, subd. (d).) Arguably, one could read those words to mean that if a mortgage has been placed *at any point in time* prior to the due date for the first installment of property taxes, a garbage lien cannot attach to the property. This

17

construction, however, ignores the well-established meaning of the term "bona fide encumbrancer for value."

As explained above, a bona fide encumbrancer, by definition, is a *subsequent* encumbrancer who obtains a lien without notice of a prior, *existing* interest. One is not a bona fide encumbrancer in the abstract, but in relationship to a particular preexisting interest—here, the garbage lien. Thus, in order to be a bona fide encumbrancer for value with regard to the garbage lien in this case, Kahan would have to allege facts showing the alleged mortgage(s) were obtained *after* the garbage lien existed but before it was recorded.[5] Kahan's conclusory allegation that one or more mortgage interests existed on the property at some unspecified point before the City recorded the garbage lien does not suffice to plead those mortgages were *subsequent* encumbrances placed after the garbage lien arose without notice of it. Nor does his legal contention the alleged mortgages were "bona fide mortgage encumbrances" suffice to overcome his failure to allege material *facts* supporting a cognizable cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 ["In reviewing the sufficiency of a complaint against a general demurrer, . . . . 'We

_____

[5] Neither Kahan nor the City discussed in their briefs at what point the garbage lien was created. Under Government Code section 25831, subdivision (a), the county board of supervisors prepares a report of delinquent charges and fixes a date for hearing any protests or objections to the report. Under subdivision (c), the board of supervisors make corrections or revisions to the report at the hearing, after which it is confirmed by resolution. Subdivision (e) provides the requirements of subdivisions (a) and (c) do not apply where a county has an administrative procedure that allows property owners to appeal, and in such cases, a list of delinquent fees is prepared and filed with the auditor. "The delinquent fees set forth in the report as confirmed, or the list prepared pursuant to subdivision (e), *shall constitute special assessments* against the respective parcels of land *and are a lien* on the property for the amount of the delinquent fees. The lien created attaches upon recordation . . . of a certified copy of the resolution of confirmation or the list prepared pursuant to subdivision (e)." (Gov. Code, § 25831, subd. (d), italics added.) From this language, it appears the garbage lien is created (as the City posited at oral argument) when the board of supervisors confirms the list of delinquent fees or prepares a list under Government Code section 25831, subdivision (e). Thus, a bona fide purchaser or encumbrancer would be protected from a superpriority lien for unpaid garbage collection fees between that time and the time the resolution of confirmation or list of delinquent fees is recorded.

18

treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' "]

Our construction of the statute is consistent with the apparent intent of the Legislature in adopting the exception here. In 1973, the Legislature passed Assembly Bill No. 1342 (1973–1974 Reg. Sess.) as part of a comprehensive effort to add a bona fide purchaser or encumbrancer exception to a number of statutes, including Government Code section 25831, and among others, statutes governing water and sewer standby charges, water service, nuisance abatement, and weed abatement. (Stats. 1973, ch. 861, pp. 1563–1576, §§ 1–19.) A report of the Assembly Committee on Local Government indicated the legislation "would alter the . . . procedure by which uncollected charges become liens against property" and explained that "uncollected charges do not become a lien on property under the following circumstances: [¶] 1. If the property in question has been sold prior to the date on which the first installment of taxes becomes delinquent (i.e. December 10 in any given fiscal year), then [¶] 2. The uncollected charge is automatically transferred to the unsecured roll and does not become a lien against the property. [¶] In effect, AB 1342 establishes the policy that if property is sold between July 1 and December 10 in any fiscal year, charges appearing upon the property tax bill will not, if left unpaid, become a lien on that property." (Assem. Com. on Local Government, Analysis of Assem. Bill No. 1342 (1973–1974 Reg. Sess.) June 12, 1973.) A staff analysis from the Senate Local Government Committee notes that "various laws allowing local governments to charge for particular services (e.g., garbage removal, weed abatement) allow for collection of delinquent charges by means of a lien on the affected property." (Sen. Com. on Local Government, Staff Analysis of Assem. Bill No. 1342 (1973–1974 Reg. Sess.) June 4, 1972, p. 1.) It describes the problem the legislation seeks to address: "For those liens which are added to the tax bill (as opposed to those which are recorded with the county recorder), it is allegedly impossible for a purchaser who buys after March 1st to know what delinquent charges are owing on the property until he receives his tax bill in November. Allegedly, this is inequitable to the new purchaser." (Ibid.) Both reports suggest that the purpose of the amendment was to address the

19

perceived inequity of charging those who purchased or encumbered property without knowing that delinquent charges had been placed on the property tax roll in the relatively brief period of weeks or months before the tax bill issued.

To the extent any ambiguity remains, our construction of the bona fide encumbrancer exception in Government Code section 25831 here comports with "reason, practicality, and common sense." (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239; *People v. Johnson* (2015) 234 Cal.App.4th 1432, 1451 [courts must interpret legislative enactments to avoid absurd consequences].) Interpreting Government Code section 25831 to preclude a garbage lien from attaching whenever a property has been encumbered by a prior mortgage at any time would make little sense because most residential properties in California are (or have been) subject to one or more mortgages. As the City argues, were we to agree with Kahan, the bona fide encumbrancer exception to Government Code section 25831 "would swallow[] its rule." Indeed, under Kahan's interpretation, a delinquent owner would not be subject to a lien for such charges just because someone, at some point in time, held a mortgage on the property. Nothing suggests the Legislature intended such a result.

Kahan relies on *County of Butte v. North Burbank Pub. Utility Dist.* (1981) 124 Cal.App.3d 342 (*County of Butte*), in which the court held that an assessment pursuant to Public Utilities Code section 16470[6] for unpaid sewage charges incurred by a mobile home park from March 1978 through June 1979 did not become a priority lien because the mobile home park had previously encumbered the property with a deed of trust in 1974. (*County of Butte*, at pp. 344–345, 347.) As an initial matter, *County of Butte* is not controlling because it involves a different statute. But more importantly, we find it inapposite because the court in *County of Butte* did not consider whether the fact that the unpaid sewer charges assessment arose *after* the deed of trust meant the notion of

---

[6] Public Utilities Code former section 16470 contained a bona fide purchaser or encumbrancer exception with similar wording to the exception in Government Code section 25831, subdivision (d).

a "bona fide encumbrancer for value" did not apply. "It is axiomatic that cases are not authority for propositions that are not considered." (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043.)

In sum, the bona fide encumbrancer exception does not apply here based on the allegations of Kahan's complaint.

## E. *Failure to State a Claim*

The trial court's order sustaining the demurrer states, "The demurrer on the basis of immunity to the Third Cause of Action for Inverse Condemnation and Violation of Due Process and the Fourth Cause of Action for Negligence is sustained, with leave to amend, to the extent the complaint goes beyond seeking a refund." Kahan contends the order must be reversed because the City is not immune from liability for damages for inverse condemnation or negligence. As we explained above, however, all four causes of action in Kahan's complaint, including his causes of action for inverse condemnation and negligence, depend on his allegation the City's special assessment lien was unauthorized. Because, as we have explained above, the lien was expressly authorized by statute, Kahan has failed to state a cognizable cause of action. Accordingly, we need not reach the question of immunity. Likewise, we need not address whether the County must be named as a necessary party.

We also reject Kahan's argument the trial court improperly sustained the demurrers to only portions of his causes of action. Kahan argues the trial court ruled the County is a necessary party to the extent Kahan seeks an injunction to compel the City to cause the County to remove the delinquent garbage charges from the tax roll, but he also seeks to enjoin the City from recording and maintaining garbage liens and to compel them to release them. Further, the trial court ruled the governmental immunity statute precludes his negligence and inverse condemnation claims to the extent he alleges relief beyond a refund, but those claims allege a right to a refund. Thus, Kahan contends, these rulings fall short of supporting dismissal of any cause of action in its entirety.

We disagree. The trial court cited several grounds for its ruling, which together disposed of all his claims. It sustained demurrers to all causes of action in the complaint

21

on the ground they failed to state a cause of action for refund of an assessment, and to his negligence and inverse condemnation claims to the extent they sought relief beyond a refund.[7] We affirm that ruling for the reasons stated above.

## F. *Leave to Amend*

In his reply brief to this court, Kahan requested leave to amend his complaint to allege that he has exhausted his administrative remedies under the property tax refund statutes, and to name the County as a defendant. Kahan raised this issue for the first time on reply, and accordingly, we need not consider it. (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 155.)

In any event, Kahan stood on his complaint and chose not to amend. When a plaintiff is given the opportunity to amend and elects not to do so, we construe the complaint strictly and presume the plaintiff has stated as strong a case as he or she can. (*Gonzales v. State of California* (1977) 68 Cal.App.3d 621, 635, disapproved on another point in *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 740; *Drum v. San Fernando Valley Bar Assn.* (2010) 182 Cal.App.4th 247, 251.) "In these circumstances, we will affirm the judgment if the complaint is objectionable on any ground raised in the demurrer." (*Drum*, at p. 251.) Although Kahan implies in his reply brief that exhaustion of his administrative remedies represents a change in circumstances that he did not have

---

[7] We observe Kahan conceded at the demurrer hearing in the trial court that he did not have a claim for damages beyond the refund claim and would amend his complaint accordingly. The court questioned Kahan's counsel about the negligence claim, for example, noting it "does go beyond simply seeking to recoup whatever had been collected" and sought relief " '[i]ncluding, but not limited to, damages in the form of charges and fees paid to the Defendants' . . . 'and other forms of economic harm and actual damages arising out of the conduct alleged herein.' " Kahan's counsel responded: "I think that we would be willing to drop that—that part of that. The claim essentially is for a refund. And in fact, I was going to suggest that if we're given leave to amend that we may want to add the money received, common count. [¶] That's essentially the relief that we're seeking. There's really no other economic harm that—either the plaintiff or the Class were seeking to recover."

the opportunity to allege previously, his declaration provides no support for that suggestion.

Because we conclude Kahan is not entitled to another opportunity to amend his complaint, we deny the motion for judicial notice filed on April 9, 2018 with his reply brief and the second supplemental motion for judicial notice filed on October 4, 2018, *after* the reply brief, asking us to take judicial notice of his postjudgment attempts to exhaust his administrative remedies with respect to a tax refund. Moreover, judicial notice would be improper because the evidence Kahan asks us to notice was not before the trial court at the time it rendered its decision. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [reviewing courts generally do not take judicial notice of evidence not presented to trial court and consider only matters which were part of the record at the time judgment was entered unless "exceptional circumstances exist that would justify deviating from that rule"]; *California School Bds. Assn. v. State of California* (2011) 192 Cal.App.4th 770, 803 [same].)

### III.  DISPOSITION

The judgment is affirmed. Respondent may recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____
Margulies, J.

We concur:


_____
Humes, P. J.


_____
Banke, J.

A150866
*Kahan v. City of Richmond*

24

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. Barry Goode

Counsel:

Nelson & Fraenkel, Gretchen M. Nelson; Law Offices of Gregg A. Rapoport and Gregg A. Rapoport for Plaintiff and Appellant.

Colantuono, Highsmith & Whatley, Michael G. Colantuono, Holly O. Whatley and Jon R. di Cristina for Defendant and Respondent.